UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | | |
|---|---|---|
| **THOMAS R. ALSUP,** | ) | Case No. 2:11-CV-01159-SI |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Omar O. Ortega, Law Offices of Harry J. Binder and Charles E. Binder, P.C.,
770 The City Drive South, Suite 2000, Orange, CA 92868-3504.  Attorneys for Plaintiff.


S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201; Kathryn A. Miller, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075.  Attorneys for Defendant.

**SIMON, District Judge.**

Thomas Alsup seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income. Because the Commissioner properly assessed the medical evidence, and because the vocational expert's ("VE") divergence from the Dictionary of Occupational Titles ("DOT") was adequately explained, the Commissioner's decision is affirmed and this case is dismissed.

## BACKGROUND

### I. The Applications

Mr. Alsup filed applications for Disability Insurance Benefits and Supplemental Security Income in October 2007. Tr. 126-134. Born in 1956, Mr. Alsup, a chronic smoker, alleged disability due to emphysema, asthma, dizzy spells, and blackouts. Tr. 155. After an administrative hearing in June 2010, the Administrative Law Judge ("ALJ") found Mr. Alsup to be not disabled. Tr. 19-30, 36-64. Mr. Alsup requested review of the ALJ's decision by the Appeals Council. Tr. 13. The Appeals Council denied Mr. Alsup's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Mr. Alsup now seeks judicial review of the ALJ's decision.

### II. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

OPINION AND ORDER, Page 2

determining whether an applicant is disabled within the meaning of the Social Security Act."
*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant does have a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## III.  The ALJ's Decision

The ALJ applied the sequential process in his decision of June 18, 2010. Tr. 19-30. At step one, the ALJ found that Mr. Alsup had not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 21. At step two, the ALJ found that Mr. Alsup's "chronic obstructive pulmonary disease (COPD) exacerbated by cigarette smoking, no useful vision in the right eye, and a depressive disorder" were severe impairments. *Id.* At step three, the ALJ found that Mr. Alsup does not have an impairment or combination of impairments that meets or equals one of the specific impairments listed in the regulations. Tr. 22.

The ALJ then determined that Mr. Alsup has the residual functional capacity ("RFC") to perform light work with the following limitations: standing and walking for not more than two hours in an eight-hour workday, occasional balancing and stair climbing, no climbing of ladders, ropes, or scaffolds, no concentrated exposure to fumes and odors, and only simple, routine tasks which do not require binocular vision. Tr. 23. In reaching this conclusion, the ALJ considered Mr. Alsup's statements but found that they were not fully credible. Tr. 24-27. In addition, the ALJ examined Constance Martin's[1] lay testimony but found that it was not credible because her report was inconsistent both internally and with the other medical evidence. Tr. 28. The ALJ also discussed the medical opinions of Drs. Condon, Webster, Eder, and Oltman; the ALJ gave limited weight to these opinions for several reasons. Tr. 26-28.

At step four, the ALJ found that Mr. Alsup could not perform his past relevant work[2] as a convenience store manager, convenience store clerk, bartender, or janitor. Tr. 29. At step five, the ALJ heard testimony from a VE, who opined that someone with the RFC identified by the ALJ would be able to perform the work of Small Product Assembler (DOT # 739.687-030) and Electronic Worker (DOT # 726.687-010). Tr. 29-30. Based on this testimony, the ALJ found that Mr. Alsup could perform work that exists in significant numbers in the national economy and is therefore not disabled. Tr. 30.

---

[1] Constance Martin is Mr. Alsup's mother-in-law. Tr. 199.

[2] "Past relevant work" refers to work experience from the last fifteen years that lasted long enough for a claimant to learn how to do it and that constituted substantial gainful activity. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a). "Substantial gainful activity means work that (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R §§ 404.1410, 416.910.

OPINION AND ORDER, Page 5

# DISCUSSION

## I. Standard of Review

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## II. Medical Evidence

Mr. Alsup asserts two allegations of error regarding the ALJ's assessment of the medical evidence. First, he alleges that the ALJ erred when he discounted Dr. Condon's assessment of

Mr. Alsup's Global Assessment Functioning ("GAF") score of 50; second, Mr. Alsup contends that the ALJ improperly rejected Nurse Practitioner Pingel's GAF scores, ranging from 45 to 50.[3] Mr. Alsup, however, does not specifically address what further limitations should have been included in his RFC determination as a result of these GAF scores.

As an initial matter, the GAF scale is merely "a tool for 'reporting the clinician's judgment of the individual's overall level of functioning'"; accordingly, a GAF score reflects a snapshot of a claimant's presentation on the day of the examination. *Chapman v. Astrue*, 2009 WL 3046025, *4 (D.Or. July 30, 2009), *adopted as modified by* 2009 WL 3046024 (D.Or. Sept. 22, 2009) (quoting American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)). Mr. Alsup's GAF scores therefore do not necessarily pertain to the entire period in which he alleges disability.

Further, a "GAF score does not determine disability." *Gardner v. Astrue*, 2009 WL 1505303, *10 (D.Or. May 27, 2009); *see also Wilberg v. Astrue*, 2009 WL 1066260, *3 (E.D.Cal. Apr. 20, 2009) ("it is 'the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity,' and the ALJ's findings of RFC need not correspond precisely to any physician's findings," quoting *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001)). Rather, the "GAF assessment is [but] one element of [a doctor's] conclusion." *Gardner*, 2009 WL 1505303 at *11. Thus, Mr. Alsup's GAF scores, alone, are inadequate to

---

[3] A GAF score between 41 and 50 indicates "'serious symptoms (e.g. suicidal ideation , severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job).'" *Clemens v. Astrue*, 2012 WL 2679439, *4 n.1 (D.Or. July 6, 2012) (quoting American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)).

establish his entitlement to Social Security benefits; the issue instead is whether substantial evidence supports the weight the ALJ afforded to the reports of Dr. Condon and Ms. Pingel.

### A. The Opinion of Dr. Condon

At the request of Disability Determination Services, Dr. Condon performed a one-time "Psychodiagnostic Evaluation" of Mr. Alsup on August 18, 2008. Tr. 420-424. Dr. Condon's assessment was based upon Mr. Alsup's subjective reports, an incomplete medical record, and a mental status examination. Tr. 420. Mr. Alsup reported to Dr. Condon that his mental impairments included anxiety, depression, and memory problems. *Id.* He also reported a suicide attempt several months earlier and ongoing concerns about finances, "noting he had been denied for Social Security benefits several times." Tr. 420-422. In addition, Mr. Alsup disclosed that he used methamphetamine for approximately two years and was charged with possession, occasionally consumed alcohol, and smoked cigarettes daily. Tr. 420-423.

During the mental status evaluation, Mr. Alsup "was well oriented and cooperative," displayed "no evidence of psychotic symptoms or disorganization," and "seemed mildly depressed." Tr. 423. Mr. Alsup was able to accurately list the date, the current president and vice-president, and the states bordering Oregon. *Id.* He also correctly calculated change for a $20 bill and provided synonyms for a variety of words. *Id.* Nonetheless, Mr. Alsup had some difficulty with digit span tasks, required three attempts to spell "world" backwards, and was only able "to accurately recount 5 of 12 details" from a short story. *Id.*

Dr. Condon diagnosed Mr. Alsup with a depressive disorder, not otherwise specified, nicotine dependence, and methamphetamine dependence "in sustained full remission per subjective report." *Id.* In addition, the doctor opined that a mood disorder and a dysthymic

OPINION AND ORDER, Page 8

disorder needed to be ruled out. *Id.* Dr. Condon also assessed Mr. Alsup with a GAF score of 50, but did not otherwise evaluate any mental-impairment limitations. Tr. 424. The doctor noted, however, that Mr. Alsup's unemployment contributed to his mental condition. *Id.* Further, Dr. Condon commented that Mr. Alsup's medical condition may be associated with his depressive symptoms and, as such, suggested a follow-up "physical examination focused on occupational capacity." *Id.*

In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). "In addition, the regulations give more weight to opinions that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted). To reject the uncontroverted opinion of a treating doctor, the ALJ must provide clear and convincing reasons supported by substantial evidence. *Ryan v. Commissioner,* 528 F.3d 1194, 1198 (9th Cir.2008). If the physician's opinion is controverted by other substantial evidence in the record, it still may only be rejected for "specific and legitimate reasons." *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998).

The ALJ gave "little weight" to Dr. Condon's evaluation because it was "inconsistent with [the] results of the mental status examination which revealed no significant deficits." Tr. 27. Thus, the ALJ rejected Dr. Condon's report, including his GAF assessment, because the doctor's clinical notes from the same evaluation were contradictory; namely, the mental status evaluation that Dr. Condon performed on Mr. Alsup revealed no abnormal psychological symptoms, only mild depression, and relatively good mental acuity. Accordingly, as the ALJ reasonably

concluded, the fact that Mr. Alsup required several attempts to spell "world" backwards or had trouble with some digit span tasks and detail recall does not indicate the serious impairment in social or occupational functioning reflected by Dr. Condon's GAF score.[4]

Such a discrepancy is a clear and convincing reason for rejecting Dr. Condon's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Bagby v. Astrue*, 2012 WL 1114298, *9 (D.Or. Feb. 7), *adopted by* 2012 WL 1114288 (D.Or. Apr. 3, 2012) (ALJ properly discredited a GAF score of 40 where that assessment was inconsistent with the doctor's own reports). Further, there is no evidence in the record, including Dr. Condon's report, that is discordant with the ALJ's RFC assessment. In sum, substantial evidence supports the clear and convincing reason the ALJ gave for discounting Dr. Condon's opinion.

B.       The Opinion of Nurse Practitioner Pingel

Like Dr. Condon, Ms. Pingel did not assess any functional limitations arising out of Mr. Alsup's mental impairments beyond evaluating his GAF score.[5] Tr. 693, 714, 724. During each counseling session in which his GAF score was evaluated, Mr. Alsup's mental status

---

[4] It should also be noted that Dr. Condon's report is contradicted by other evidence in the record. For example, Dr. Hennings, a consulting source who completed a Psychaitric Review Technique form and a Mental RFC evaluation on October 1, 2008, assessed Mr. Alsup with nominal psychological limitations and further opined that Dr. Condon's GAF score should only be accorded partial weight because "Mr. Alsup is not a credible reporter & there are some concerns about possible symptom embellishment for secondary gain." Tr. 438-454. Mr. Alsup does not challenge his adverse credibility finding. The Court additionally notes that there are no examining or treating doctors who evaluated Mr. Alsup's mental impairments, other than Dr. Condon, due to Mr. Alsup's failure to seek treatment.

[5] Mr. Alsup argues that Ms. Pingel's "findings on clinical interviews" establish that the ALJ committed reversible error. Pl.'s Opening Br. 15-16. The "findings" to which Mr. Alsup refers are merely the subjective symptoms he reported during his counseling sessions. *Id.* (citing Tr. 503, 681-682, 712-713, 721-722, 725-727). A claimant's subjective reports, however, do not constitute clinical findings and are insufficient by themselves to establish the existence of an impairment. *See* 20 C.F.R. §§ 404.1528(a), 416.928(a); *see also* SSR 96-4p, 1996 WL 374187 (S.S.A.).

OPINION AND ORDER, Page 10

examinations revealed that his thought processes were linear, logical, and reality-based; his speech was normal; he was not experiencing any hallucinations, delusions, or paranoia; he was appropriately dressed and groomed; his insight and judgment ranged from fair to good; he was alert and oriented to person, place, and time; his memory ranged from fair to good; his concentration was good; and he had no intention of further suicide attempts. Tr. 691-692, 712-713, 722-723. Mr. Alsup also stated that his depression and anxiety were primarily due to his lack of Social Security benefits or other income. Tr. 691, 721-722. Moreover, he reported drinking regularly and "was not interested in stopping [despite] being warned about drinking and taking medications." Tr. 724, 692, 714.

"Other" medical sources, such as nurse practitioners, can be used to determine the severity and functional limitations stemming from an impairment. SSR 06-03p, 2006 WL 2329939 (S.S.A.). However, where, as here, a nurse practitioner is not working in conjunction with a doctor, the ALJ need only offer a germane reason to reject the nurse practitioner's opinion. *Turner v. Astrue*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

Consistent with this standard, the ALJ gave "little weight" to Ms. Pingel's GAF scores, "in light of [her] records which reveal generally normal mental status exams." Tr. 27. Specifically, the ALJ noted that Ms. Pingel's reports revealed that Mr. Alsup's "primary struggle was related to limited finances [and his mental] status exam was normal other than dysthymic mood and some memory deficit." *Id.* In addition, the ALJ gave limited weight to Ms. Pingel's opinion because her narrative reports, reflecting Mr. Alsup's subjective statements, were inconsistent with her GAF scores. *Id.* For example, on the same day that she evaluated Mr. Alsup with a GAF score of 50, Ms. Pingel noted that he reported "doing better"; further, he ranked his

anxiety and depression at a "3/10" and "4/10," respectively, because of the "lack of [Social Security benefits] and not getting results." Tr. 691. As such, Ms. Pingel opined that Mr. Alsup was experiencing "low graded depress[ion] and an[xiety] about his [Social Security benefits] claim." Tr. 693. Thus, as the ALJ determined, Ms. Pingel's GAF scores were contravened by her failure to observe any psychiatric abnormalities during testing and her narrative chart notes.

Lack of medical findings and internal inconsistencies are germane reasons to reject the opinion of a nurse practitioner. *See, e.g., Long v. Astrue*, 2012 WL 1698082, * 5-6 (D.Or. May 14, 2012). Further, just as with Dr. Condon, there is nothing in Ms. Pingel's reports that is inconsistent with the limitations set forth in the ALJ's RFC determination. In sum, substantial evidence supports the germane reasons the ALJ gave for discrediting Ms. Pingel's opinion.

### III.    Jobs Identified by the VE

Mr. Alsup also argues that the ALJ erred by failing to resolve the discrepancies between VE's testimony and the DOT prior to relying on the VE's testimony to determine that he could perform other work that exists in significant numbers in the national and local economies. Specifically, Mr. Alsup contends that the jobs identified by the VE, which require depth perception, were incompatible with his RFC for work that does not require binocular vision.

At the hearing, the VE testified that, based on Mr. Alsup's age, education, work experience, and RFC, he was capable of performing the requirements of representative occupations such as Small Products Assembler and Electronic Worker. Tr. 29-30, 58-61. The ALJ explicitly asked the VE whether her testimony regarding the types of work potentially available conflicted with the DOT; the VE answered in the affirmative and identified a single discrepancy: the light exertion jobs identified typically require the ability to stand and walk about

six hours and, thus, were seemingly inconsistent with the ALJ's restriction to work that required standing and walking no more than two hours in an eight-hour workday. Tr. 58-59; *see also* SSR 83-10, 1983 WL 31251 (S.S.A.).

The VE, however, went on to explain the disparity between the information contained in the DOT and the jobs identified. Tr. 59-60. She stated that some light jobs are defined as such due to their production pace. Tr. 59. Thus, "even though the DOT may describe them as a full range of light," there are "many [light exertion] jobs" that are performed sitting, or sitting and standing at will, "and where the lifting . . . only reaches a few pounds and in some cases a few ounces." *Id.* The VE therefore concluded that Mr. Alsup was capable of performing the jobs she previously identified because they did not actually require standing or walking for more than two hours per workday. *Id.* In an abundance of caution, however, the VE reduced the incidence of these jobs by 50 percent, such that there would be 1200 Small Products Assembler jobs available in the regional economy[6] and 84,000 nationally, and 600 Electronic Worker jobs available in the regional economy and 25,000 nationally. Tr. 61. The VE also explained that her testimony was "based on a lot of research [that she performed, including] labor market surveys over the years [and] job analyses." Tr. 60.

In making a disability determination at step five, the ALJ relies primarily on the DOT for information about the requirements of work in the national economy. SSR 00–04p, 2000 WL 1898704 (S.S.A.); *see also Pinto v. Massanari,* 249 F.3d 840, 845–46 (9th Cir. 2001). When a VE provides information about the requirements of an occupation, the ALJ has an affirmative

---

[6] Between 1,000 and 1,500 jobs in the regional economy constitutes a significant number for purposes of the Social Security Act. *Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999) (citing *Barker v. Sec'y of Health & Human Servs.,* 882 F.2d 1474, 1479 (9th Cir. 1989)).

duty to determine whether the information conflicts with the DOT and, if so, to obtain an explanation for any apparent conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007). The ALJ must resolve the conflict and make findings about how the conflict was resolved, before relying on the testimony to find that a claimant is not disabled. *Id.;* SSR 00–04p, 2000 WL 1898704 (S.S.A.). In other words, for an ALJ to accept VE testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008); *Pinto,* 249 F.3d at 846. Such evidence includes available job data and a claimant's specific limitations. *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir.1995).

The ALJ complied with that duty here. As a preliminary matter, no discord exists between the VE's testimony and the DOT regarding Mr. Alsup's lack of binocular vision. While the jobs identified by the VE require the ability to perceive depth regularly, depth perception is not synonymous with binocular vision; rather, while more difficult, it is possible to perceive the depth of an object using only one eye. *See* Michael Kalloniatis & Charles Luu, *Perception of Depth*, WEBVISION: THE ORGANIZATION OF THE RETINA AND VISUAL SYSTEM, http://webvision. med.utah.edu/book/part-viii-gabac-receptors/perception-of-depth/ (last visited July 26, 2012).[7] Where the VE's testimony does not conflict with the DOT and is properly based on the claimant's RFC and other vocational factors, the ALJ can rely on that opinion. *See Bayliss*, 427 F.3d at 1218; *see also Hill v. Astrue*, 365 Fed.Appx. 808, 810 (9th Cir. 2010) (affirming the

---

[7] Even the on-line medical resource that Mr. Alsup relies on for his assertion to the contrary states that many "depth perception clues can be detected with only one eye." *See* Pl.'s Opening Br. 17-18 (citing Merck Manual Home Health Handbook, *Changes in Vision*, http://www.merckmanuals.com/home/eye_disorders/symptoms_of_eye_disorders/changes_in_vision.html?qt=depth%20perception&alt=sh).

OPINION AND ORDER, Page 14

Commissioner's decision where "there was no meaningful departure from the DOT as presented by the VE"). Thus, because there was no apparent conflict between the VE's testimony and the DOT as to this issue, the ALJ properly relied on the VE's testimony in making his step five determination.

Moreover, there is no evidence in the record that Mr. Alsup's limited vision in his right eye affected his depth perception; to the contrary, despite the fact that his vision impairment arose during childhood as the result of scarlet fever, Mr. Alsup was nonetheless able to serve in the Army for four years following vision testing, drive, read "a lot," use the internet to check e-mail, watch television, and work for several years with this limitation. Tr. 41-45, 187, 421-422.

Further, Mr. Alsup does not detail how his lack of binocular vision prevents him from performing the jobs identified by the VE, and Mr. Alsup bears the burden of establishing that the alleged error was harmful. *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009).[8] To say "that the claimant has the 'burden' of showing that an error was harmful is not to impose . . . a particularly onerous requirement"; rather, "the party seeking reversal [merely] must explain why the erroneous ruling caused harm." *Id.* at 410. Mr. Alsup, however, failed to address how the ALJ's alleged error at step five was harmful, and it is not apparent to this Court, especially since the record indicates that his depth perception was not previously limited by this impairment. Without more, Mr. Alsup cannot establish error, let alone a harmful one.

---

[8] *Sanders* involved a Veterans Administration claim, not a Social Security disability claim. The Ninth Circuit has held, however, that *Sanders* applies to Social Security cases as well as to Veterans Administration cases. *McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011) (as amended); *see also Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012) (*McLeod* found that *Sanders* applies "fully" to Social Security cases).

OPINION AND ORDER, Page 15

Finally, to the extent that there was a conflict between the VE's testimony and the DOT regarding Mr. Alsup's limitation to standing and walking for at most two hours during an eight-hour workday, this inconsistency was adequately resolved by the ALJ. Even though the DOT listed these positions as requiring standing and walking up to six hours per eight-hour workday, the VE accounted for this discrepancy by explaining that, as they were actually performed, the jobs identified were consistent with Mr. Alsup's RFC. The ALJ explicitly discussed the VE's testimony and accepted her "reasonable explanation for the discrepancy" based on her professional experience and knowledge of job markets. Tr. 30. As such, the ALJ did not err at step five because he resolved the conflict between the VE's testimony and the DOT, and the record contains persuasive evidence to support the deviation.

In summary, substantial evidence supports the ALJ's reliance on the VE's testimony and step-five finding.

## CONCLUSION

For the reasons stated above, the Commissioner's decision that Mr. Alsup is not disabled is AFFIRMED, and this case is DISMISSED.

DATED this 4th day of September, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge